UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES HAYNES,

                Plaintiff,

  -v-                                                    3:12-CV-916

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN & GORTON<br>Attorneys for Plaintiff<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, NY  13761 | PETER A. GORTON, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>SOCIAL SECURITY ADMINISTRATION REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY  10278 | JEREMY A. LINDEN, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

     Plaintiff James Haynes ("Haynes" or "plaintiff") brings this action pursuant to §§ 205(g)

and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to

review a final determination of the defendant Commissioner of Social Security denying his

application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI").

The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. BACKGROUND

Haynes filed an application for SSD and SSI on January 19, 2010, claiming a period of disability beginning on August 30, 2009. His claims were denied on March 8, 2010. Upon plaintiff's request, a hearing was conducted by video before an Administrative Law Judge ("ALJ") on December 7, 2010. The ALJ rendered a decision on February 9, 2011, finding that plaintiff was not disabled during the relevant time period and denying his claims. Plaintiff appealed the ALJ's decision to the Appeals Council. On May 11, 2012, the Appeals Council issued an order denying his request for review. Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff filed this action on June 5, 2012. The parties' familiarity with the facts is assumed, and they will therefore only be developed as necessary in the analysis.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled, and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then Step Two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then Step Three requires the ALJ to determine whether, based solely on medical evidence, the impairment meets an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, Step Four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). If it is determined that claimant cannot perform past relevant work, the

burden shifts to the agency for Step Five. Id. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

Where the alleged disability involves a mental impairment, there is a "special technique" that must be applied at Steps Two and Three and at each level of the administrative review process. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. § 404.1520a. This technique requires consideration of "four broad functional areas," including: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." Kohler, 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(d)(1)).

If, on the other hand, the claimant's mental impairment is deemed severe, "the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the

impairment meets or is equivalent in severity to any listed mental disorder." Id. (citing 20 C.F.R. § 404.1520a(d)(2)). If so, the claimant is disabled. Id. If not, the reviewing authority then assesses the claimant's RFC at Step Four. Id. (citing 20 C.F.R. § 404.1520a(d)(3)). The application of this special technique must be documented. 20 C.F.R. § 404.1520a(e).

### C. Analysis

The ALJ found that Haynes had not engaged in substantial gainful activity since August 30, 2009, the alleged onset date. She further determined that plaintiff suffers from the following severe impairments: depressive, anxiety, panic, and impulse control disorders as well as cognitive deficits. However, these impairments, or combination thereof, did not meet any of those listed in Appendix 1 of the Regulations. The ALJ then found that plaintiff has an RFC that allows him to perform the physical demands of work at all exertional levels. However, his nonexertional mental limitations prevent him from working in a supervisory capacity and limits his ability to perform complex tasks or tasks involving reading and math.

The ALJ noted that Haynes can "understand, remember and carry out simple 1-2 step instructions; can make judgments commensurate with the functions of unskilled work; can respond appropriately to supervision, co-workers, and usual work situations; and can deal adequately with changes in a routine work setting on a regular and continuing basis." R. at 14.[2] Finally, the ALJ determined that although he could not perform any past relevant work, there are jobs available in the national economy that plaintiff can perform despite the limitations caused by his impairments. The ALJ thus concluded that Haynes is not disabled within the meaning of the Social Security Act, and is therefore not entitled to benefits.

---

[2] Citations to "R." refer to the Administrative Record. ECF No. 8.

Haynes's only claim in this action is that the ALJ erred at Step Three when she determined his mental impairments do not meet any of those listed in Appendix 1 of the Regulations. He specifically argues that his intellectual disability constitutes "mental retardation" as that term is defined in Listing 12.05(C).

Pursuant to the Social Security regulations, a claimant suffers from mental retardation if he exhibits "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. As pertinent here, "[t]he required level of severity for this disorder is met when" the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05(C). Thus, to establish disability under § 12.05(C) of the Listing, Haynes must show: (1) subaverage intellectual function with adaptive functioning deficits manifested before age twenty-two; (2) a valid IQ score between sixty and seventy; and (3) an impairment, other than his low IQ, that imposes an additional and significant work-related limitation of function.

It is undisputed that Haynes's IQ score is between sixty and seventy, and that he has additional severe impairments (i.e. depressive, anxiety, panic, and impulse control disorders as well as cognitive deficits). The dispute instead centers on whether he has significant deficits in adaptive functioning.[3]

---

[3] The ALJ determined that there was insufficient information from which to conclude that his learning problems initially manifested before age twenty-two. This was arguably error. Indeed, "it is reasonable to presume, in the absence of evidence indicating otherwise, that claimants will experience a fairly constant IQ throughout their lives." Talavera v. Astrue, 697 F.3d 145, 152 (2d Cir. 2012) (internal quotation marks and alterations omitted). It is unnecessary to review this determination because, as explained below, the ALJ's decision regarding a lack of significant deficits in adaptive functioning is supported by substantial evidence.

(continued...)

"Adaptive functioning" refers to a claimant's "ability to cope with the challenges of ordinary everyday life." Talavera, 697 F.3d at 153 (internal quotation marks and alteration omitted). Therefore, if the claimant can "satisfactorily navigate activities such as living on [his] own, . . . paying bills, and avoiding eviction, [he] does not suffer from deficits in adaptive functioning." Id. (internal quotation marks and alterations omitted). Although a qualifying IQ score may establish that a claimant suffers from significantly subaverage general intellectual functioning, "there is no necessary connection between an applicant's IQ scores and [his] relative adaptive functioning." Id. In other words, "the regulations recognize that persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact." Id. (internal quotation marks omitted).

During the hearing, Haynes advised that he is able to live on his own, clean his apartment, pay his own bills, walk to the store and to visit his mother, and shop for food. Further, during a February 2010 psychiatric examination with Dr. Dennis M. Noia, plaintiff reported that "he is able to dress, bathe, and groom himself. He reports that he can cook and prepare food, do general cleaning, laundry, shopping, manage money, does not drive, and can us public transportation." R. 190. Finally, despite his illiteracy and learning difficulties, he was able to maintain full-time employment performing relatively simple work at National Pipe & Plastics, Inc. from April 10, 1984, through August 3, 2002, and from August

---

(...continued)
    Whether plaintiff's impairments manifested before the age of twenty-two is thus irrelevant.

24, 2005, through August 27, 2009.[4]  See R. 179.  This constitutes substantial evidence to support the ALJ's finding.  See Edwards v. Astrue, No. 5:07-CV-898, 2010 WL 3701776, at *3–4 (N.D.N.Y. Sept. 16, 2010) (Mordue, C.J.).

## IV. CONCLUSION

The ALJ's determination that plaintiff's impairments do not meet any of those listed in Appendix 1 of the Regulations is supported by substantial evidence in the record.

Therefore, it is

ORDERED that

1.  The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

2.  The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated: December 12, 2013
         Utica, New York.

---

[4]  According to plaintiff, this employment terminated because he failed to produce a doctor's note after missing a single day of work, not due to any physical or mental impairment that prevented him from working.